UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENET HABTEMARIAM,<br><br>Plaintiff,<br><br>v.<br><br>GATEWAY BANK, F.S.B., et al.<br><br>Defendants. | No. 2:26-cv-00726-DC-CKD<br><br>ORDER DENYING PLAINTIFF'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER<br><br>(Doc. No. 4) |

This matter is before the court on Plaintiff Genet Habtemariam's *ex parte* motion for a temporary restraining order. (Doc. No. 4.) The pending motion was taken under submission to be decided on the papers pursuant to Local Rule 230(g). (Doc. No. 7.) For the reasons explained below, the court will deny Plaintiff's motion.

**BACKGROUND**

On March 4, 2026, Plaintiff filed this action against Defendants Gateway Bank, F.S.B. ("Defendant Gateway") and Total Lenders Solutions, Inc., alleging wrongful foreclosure and breach of contract arising out of a loan modification/settlement agreement concerning real property located at 7 Shipman Court, Sacramento, California 95823 ("the Property"). (Doc. No. 1.) In her complaint, Plaintiff alleges as follows.

In 2001, Plaintiff obtained a purchase money loan to acquire the Property. (*Id.* at ¶ 20.)

1

1  Plaintiff refinanced that loan with Defendant Gateway secured by a deed of trust on the Property
2  in April 2007. (Doc. Nos. 1 at ¶¶ 9, 21; 1-2 at 7.) Shortly thereafter, Plaintiff obtained a second
3  loan from National City Bank, secured by a second deed of trust on the Property. (Doc. No. 1 at
4  ¶¶ 21–22.) National City Bank later merged with PNC Bank. (*Id*. at ¶ 21.)

5  At some point, PNC Bank initiated collection and foreclosure actions on the second deed
6  of trust on the Property.[1] PNC Bank sent Plaintiff a letter on April 26, 2010, stating it would
7  discontinue collection and foreclosure activity on the second deed of trust on the Property. (*Id*. at
8  ¶ 23.) A few months later, in June 2010, Plaintiff received an IRS Form 1099-C from PNC Bank.
9  (*Id*. at ¶ 24.) That form indicated the full amount owed on the second mortgage, $46,134.46, had
10 been cancelled. (*Id*.) Plaintiff believed the 1099-C form canceled her debt and relied on it as proof
11 that PNC Bank intended to cancel the second loan on the Property. (*Id*. at ¶ 25.) However, PNC
12 Bank instead internally marked the loan as "charged off."[2] (*Id*. at ¶ 26.)

13 In May 2012, PNC Bank notified Plaintiff that it had assigned the second loan to BSI
14 Financial Services, Inc. (*Id*. at ¶ 28.) Through a series of assignments, the second loan and second
15 deed of trust was ultimately transferred to Vida Capital Group, LLC ("Vida"). (*Id*. at ¶¶ 30–35.)
16 On September 22, 2025, Vida recorded a notice of default on the second loan. (*Id*. at ¶ 36.)
17 Approximately five months later, in February 2016, Vida foreclosed on the Property and obtained
18 legal title to the Property. (*Id*. at ¶ 37.)

19 On May 11, 2016, Vida filed an unlawful detainer action against Plaintiff. (*Id*. at ¶ 38.) In
20 response, Plaintiff filed a complaint against PNC Bank, Vida, U.S. Mortgage Resolution, and
21 Defendant Gateway in a separate action, *Habtemariam v. PNC Bank, N.A., et al.*, No. 16-cv-
22 01189-DC-AC ("*Habtemariam I*"), to unwind the foreclosure. (*Id*. at ¶¶ 19, 39.) On or about
23 September 1, 2017, Plaintiff and Defendant Gateway entered into a forbearance agreement

---

[1] In her complaint, Plaintiff does not identify when and/or why PNC Bank initiated collections and foreclosure proceedings on the second deed of trust on the Property.

[2] "Charge off" is a "term of art for credit providers, understood as writing off a debt as a loss because payment is unlikely." *Hickson v. Experian Info. Sols., Inc.*, No. 21-cv-00370-AA, 2023 WL 2734795, at *1 (D. Or. Mar. 31, 2023) (citing Charge Off, Black's Law Dictionary (11th ed. 2019)).

pursuant to which Defendant Gateway agreed to refrain from pursuing foreclosure proceedings under the first loan and deed of trust pending resolution of *Habtemariam I*. (Doc. Nos. 1 at ¶¶ 40–41; 1-2 at 1.) On March 11, 2019, Defendant Gateway was dismissed from *Habtemariam I*. (Doc. No. 1 at ¶ 43.) The forbearance agreement terminated effective September 30, 2020. (Doc. No. 1-2 at 1.)

On October 1, 2021, Plaintiff and Defendant Gateway entered into a contract governing Plaintiff's repayment of her first loan on the Property ("2021 Loan Modification Agreement"). (Doc. No. 1-2 at 1.) Under the 2021 Loan Modification Agreement, the first loan was bifurcated into two promissory notes with separate payment plans. (*Id*. at 2.) The 2021 Loan Modification Agreement also set forth that if the "[Plaintiff] fails to timely pay to [Defendant Gateway] any payments required to be made pursuant to the Notes of this Agreement" Plaintiff would be in default and Defendant may proceed with foreclosure under the deed of trust. (*Id*. at 3–4.) Plaintiff states she "has remained current on her payments pursuant to [the 2021 Loan Modification Agreement]." (Doc. No. 1 at ¶ 42.) However, Defendant Gateway has refused to accept payments from Plaintiff—causing an "alleged delinquency" on Plaintiff's loan payments. (*Id*. at ¶ 11.)

Because of this alleged delinquency, Defendant Gateway scheduled a foreclosure sale of the Property for March 10, 2026.[3] Defendant Total Lenders Solutions, Inc. was appointed the trustee responsible for conducting the March 10, 2026, foreclosure sale. (*Id*. at ¶ 13.) From February 9, 2026, through March 4, 2026, Plaintiff's counsel reached out to Defendant Gateway to see if the scheduled foreclosure sale could be postponed while the remaining parties in *Habtemariam I* proceeded to a settlement conference and trial. (Doc. No. 8 at 1–2.) As part of his efforts, Plaintiff's counsel called Kal Bentchev, an official for Defendant Gateway, "almost daily since February 2026." (*Id*. at 2.) Mr. Bentchev did not return Plaintiff's counsel's calls. (*Id*.)

On March 5, 2026, Plaintiff filed the pending *ex parte* motion to enjoin Defendants from advertising, holding, conducting or participating in any foreclosure sale or Trustee's Sale of the Property. (Doc. No. 4-3 at 7.) On March 6, 2026, the court ordered Defendants to file an

---

[3] In her complaint, motion, and attached filings Plaintiff does not identify when she was notified that Defendant Gateway initiated a foreclosure sale of the Property.

opposition or statement of non-opposition to the motion by March 9, 2026. (Doc. No. 7.) That same day, Plaintiff filed a declaration from her counsel in support of her motion. (Doc. No. 8.) On March 9, 2026, Defendant Gateway filed an opposition to Plaintiff's motion. (Doc. No. 9.)

**LEGAL STANDARD**

The purpose of a temporary restraining order is to preserve the status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974). The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A plaintiff seeking a preliminary injunction must make a showing on all four of these prongs. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Courts within the Ninth Circuit may also consider a request for a temporary restraining order using a "sliding scale" approach in which "a stronger showing of one element may offset a weaker showing of another." *Id.* at 1131–35. "[W]hen plaintiffs establish that the balance of hardships tips sharply in their favor, there is a likelihood of irreparable injury, and the injunction is in the public interest, they need only show 'serious questions' on the merits." *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022) (citing *All. for the Wild Rockies*, 632 F.3d at 1135). Nevertheless, injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

**ANALYSIS**

The court is unable to grant the relief Plaintiff requests in her motion. As a preliminary matter, Plaintiff has not satisfied the requirements of Local Rule 231(b). Pursuant to Local Rule 231(b), "[i]n considering a motion for a temporary restraining order, the [c]ourt will consider

1   whether the applicant could have sought relief by motion for preliminary injunction at an earlier
2   date without the necessity for seeking last-minute relief by motion for temporary restraining
3   order." L.R. 231(b). If the court finds that there was undue delay in seeking injunctive relief, the
4   court "may conclude that the delay constitutes laches or contradicts the applicant's allegations of
5   irreparable injury and may deny the motion solely on either ground." *Id.*; *see Tri-Valley CAREs v.*
6   *United States Dep't of Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012) ("Denial of a motion as the
7   result of a failure to comply with local rules is well within a district court's discretion.").

8         Here, Plaintiff contends in her temporary restraining order checklist that there has not
9   been an undue delay in bringing her motion because the "[motion] is being sought within three
10  business days of notice of irreparable and imminent harm." (Doc. No. 4-1 at 1.) The court finds
11  Plaintiff's contention unavailing. Plaintiff indicates she was provided notice of the upcoming sale
12  as early as February 9, 2026. (Doc. No. 8 at 1.) Despite this notice, Plaintiff waited nearly a
13  month to file the motion—only three business days before the scheduled sale. Plaintiff had
14  multiple opportunities to seek "relief by motion for preliminary injunction at an earlier date
15  without the necessity for seeking last minute relief by motion for temporary restraining order."
16  L.R. 231(b); *see Wilkinson v. PHH Mortg. Corp.*, No. 24-cv-01416-TLN-AC, 2024 WL 2330542,
17  at *3 (E.D. Cal. May 22, 2024) (denying plaintiffs' application for a temporary restraining order
18  solely based on Local Rule 231(b) because plaintiffs waited until four business days prior to the
19  foreclosure sale despite having ample notice of the sale); *Sewell v. Franklin Credit Mgmt. Corp.*,
20  No. 24-cv-1788-TLN-DB, 2024 WL 3203328, at *2 (E.D. Cal. June 27, 2024) (denying plaintiff's
21  application for a temporary restraining order for undue delay under Local Rule 231(b) where
22  plaintiff sought relief a few hours before the foreclosure sale of his property); *Fivefold Props.*
23  *Dunnegan LLC v. Toorak Cap. Partners LLC*, No. 24-cv-00958-SVW-JDE, 2024 WL 3009327,
24  at *2 (C.D. Cal. May 7, 2024) (denying temporary restraining order for "unreasonable delay"
25  where plaintiff waited until two days prior to a foreclosure sale to seek an injunction). Thus,
26  denial of Plaintiff's motion is warranted for this reason alone.

27        Even if Plaintiff had complied with the procedural requirement of this court's local rules,
28  it appears from the face of Plaintiff's complaint that this court does not have subject matter

jurisdiction. In her complaint, Plaintiff asserts this court has subject matter jurisdiction pursuant to federal question jurisdiction because the "action arises under federal law, including regulations interpreting the legal effect of issuing an IRS Form 1099-C as it pertains to the existence of a debt." (Doc. No. 1 at ¶ 4.) However, Plaintiff's complaint fails to state a federal claim.

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As such, they "have an independent obligation to ensure that they do not exceed the scope of their jurisdiction[.]" *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011); *see Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004) (noting federal courts are "obligated to consider sua sponte whether [they] have subject matter jurisdiction"); *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 593 (2004) (finding it is the obligation of the district court to be alert to jurisdictional requirements). In general, federal courts hear cases that arise from diversity of citizenship[4] or that present a federal question. *See* 28 U.S.C. §§ 1331–32. The presumption is against jurisdiction, and "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377.

Federal district courts have original jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A case 'arises under' federal law either where federal law creates the cause of action or 'where the vindication of a right under state law necessarily turn[s] on some construction of federal law.'" *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088–89 (9th Cir. 2002) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 8–9 (1983)).

Here, Plaintiff's claims do not invoke federal question jurisdiction under 28 U.S.C. § 1331. As noted above, Plaintiff's complaint contains two claims—wrongful foreclosure and breach of contract— both of which arise under state law. *See Gomez v. Celebrity Home Health & Hospice Inc.*, No. 16-cv-02754-JJT, 2017 WL 1282803, at *4 (D. Ariz. Apr. 6, 2017) (dismissing case for lack of federal jurisdiction because "[t]he only remaining claim in the proposed

---

[4] Plaintiff does not allege that diversity jurisdiction exists under 28 U.S.C. § 1332, and the complaint does not contain sufficient information for the court to conclude that there is complete diversity amongst the parties.

Amended Complaints [] is Plaintiff's breach of contract claim—a state law claim"); *Smith v. Deutsche Bank Nat'l Trust*, No. 12-cv-01795-AWI-SMS, 2013 WL 3863947, at *2 (E.D. Cal. Jul. 24, 2013) ("Wrongful foreclosure is a state-law claim.") *findings and recommendations adopted in* 2013 WL 4542107 (E.D. Cal. Aug. 26, 2013). Further, Plaintiff's reference to "regulations interpreting the legal effect of issuing an IRS Form 1099-C as it pertains to the existence of a debt" does not transform her state law claims into federal claims. (*See* Doc. No. 1 at ¶ 4); *see also Smolko v. Capital One, N.A.*, No. 16-cv-00278-LAB-WVG, 2016 WL 737446, at *2 S.D. Cal. Feb. 25, 2016) (finding "the mention of federal taxation" including a 1099-C form, in itself, "does not create a federal claim").[5] Because Plaintiff's claims are clearly based on state law, the courts find there is no federal question jurisdiction in the case for purposes of subject matter jurisdiction. Therefore, the court will deny Plaintiff's motion for temporary restraining order.

**CONCLUSION**

For the reasons explained above,

1.  Plaintiff's *ex parte* motion for a temporary restraining order (Doc. No. 4) is DENIED.

IT IS SO ORDERED.

Dated:  **March 9, 2026**

Dena Coggins
United States District Judge

---

[5] Additionally, Plaintiff has not explained how the 1099-C form issued by PNC Bank relates to this action. PNC Bank issued the 1099-C form, and that form concerns Plaintiff's second loan on the Property. That loan appears to be distinct from the loan that is subject to the 2021 Loan Modification Agreement at issue in the instant motion.